Supreme Court, July, 1908.    [Vol. 60.

JOHN W. KLAUCK, Plaintiff, v. THE FEDERAL INSURANCE COMPANY and Others, Defendants.

(Supreme Court, Erie Special Term, July, 1908.)

Contracts — Parties and persons by whom or against whom enforceable — Promise for benefit of third persons and rights of third persons — Agreement between underwriters and wrecking company.

Pleading — Matters relating to pleading generally — Conclusions of law — Allegation that defendant acted as trustee.

> Where two vessels, insured against marine perils, were stranded by a violent gale and the owner had the right under the terms of the policy to release the vessels, for the expense of which the insurers agreed to contribute according to the amount of their insurance; and where the owner while the vessels were aground waived its right to release them by its own efforts and consented that the insurers might release them and for that purpose employ a certain wrecking company, and the insurers thereupon contracted with the wrecking company, which had previously submitted to them a written proposal to do the work, the insurers in making such contract did not act as trustees of an express trust, nor was the contract made for the benefit of nor is it enforceable by the owner; and the allegations to that effect, in the answer of the insurers in an action to recover the contract price, are conclusions that are not supported by the facts, which are pleaded.

MOTION for reargument of demurrer.

H. Tracy Duncan, for motion.

George Clinton, Jr., opposed.

WHEELER, J. Counsel for the defendants insist this court has failed to make the proper distinction between the allegations of the answer as to the counterclaims therein set forth to which the plaintiff replied. In the second clause of the answer the defendants allege that the contract with the wrecking company was made solely for the benefit of the defendants.

In the third paragraph of the answer the defendants allege,

in substance, the stranding of the vessels, the insurance of said vessels by defendants against marine perils and that, under such policies, the owner of the vessels had the right to release them, for the expense of which the defendants agreed to contribute according to the amount of their insurance, and were under obligations to reimburse the owner for its charges and expenses therein, and that while the steamers were so aground the owner agreed with the defendant to waive its right under said policies to release the vessels by its own efforts and, in lieu thereof, would permit the defendants to release them and employ the plaintiff's assignor for that purpose and contract with the wrecking company on the terms of its proposal " for the benefit and use of said United States Transportation Company    *    *    * ; that said contract was entered into and, especially, the guaranty as to time therein inserted, for the express benefit and use of the United States Transportation Company, the owner of said steamers; and for the purpose of enabling defendants to perform their obligations to said company under and by virtue of their said policies    *    *    *    all of which was well known to the Donnelly Salvage & Wrecking Company."

In other words, the defendants have undertaken to assert that, in making the contract for the release of the vessels and in setting up the alleged counterclaim for damages for not releasing the vessels until after April fifteenth, they were acting as trustees for the owner of the vessels, and argue that they had the right to assert the alleged counterclaim as the trustees of an express trust, and that, consequently, any release by the vessel owner of the underwriters from liability could not defeat a recovery in defendants' favor as the representatives of an express trust. Defendants' counsel argues that, while a release might bar a recovery in so far as the defendants asserted a counterclaim in their own right, such a release would not avail the plaintiff in so far as the counterclaims are asserted by the defendants as trustees for the owner. And herein it is claimed the court in its former opinion failed to make the proper distinction.

The learned counsel for the defendants discussed the point fully in his brief submitted on the former argument, and the

cases there cited were all carefully examined by the court. The court was not, however, impressed at that time with the soundness of the position taken; and a re-examination of the question has not changed its views in this regard.

It is true that, in the paragraph or clause of the answer above quoted, the defendants allege that the contract with the wrecking company was made " for the benefit and use of said United States Transportation Company." This allegation, however, cannot be deemed controlling in the disposition of the question presented, because the contract itself between the underwriters and the wrecking company is set forth in full in the answer; and the rights and obligations of the parties must be determined by the terms of that instrument and not by some allegation as to its legal force and effect which, at most, is but pleading a conclusion of law.

We are of the opinion that the contract was not primarily to secure a benefit to the owner, but to prevent loss to the underwriters, whether that loss might come from being obliged to pay damages to the owner for a failure to release the vessels within a reasonable time, or whether, from delay in releasing the vessels, which might result in an abandonment by the owner, from a constructive total loss or from whatever cause. We need only repeat what we said in our former opinion: " The contract sued on was made by the plaintiff's assignor with the defendants and not with the transportation company. There is no privity of contract between the wrecking company and the transportation company. It was not made primarily for the benefit of the transportation company but for the benefit of the underwriters, these defendants, who had undertaken, by an agreement with the owner, to release the steamers. The wrecking company promised to do nothing for the transportation company. The transportation company had no control over the contract."

" The underwriters were at liberty to cancel their contract with the wrecking company (if the wrecking company assented) and make a new arrangement with others to release the steamers. The transportation company would have had nothing to say as to such cancellation. The underwriters might release the wrecking company altogether from any lia-

bility or damages sustained by reason of their failure to keep the agreement, and the vessel owner would have had no right to interfere." We might have added that the transportation company incurred no liability whatever to the wrecking company for the payment of the contract price for releasing the vessels, and that, had the wrecking company become insolvent so as to have been unable to respond in any event for damages sustained by a failure to perform its contract, the underwriters would still have remained liable to the owner for such damages as it might have sustained thereby.

This contract was addressed to defendants' agent and accepted by them, and reads as follows:

" We hereby offer to release Steamers ' H. W. Smith ' and ' William Nottingham ' from their present position ashore on the beach and deliver them safely afloat at their moorings, inside the breakwater, for the sum of $39,500.00, this sum to include both vessels. Work to commence as soon as we can assemble the plant and proceed with all possible despatch. We further guarantee that we will release these steamers before the 15th of April, 1907.

" It is further agreed that satisfactory proof shall be produced, if required, of our ability to perform the work mentioned and the method adopted for floating shall be subject to the approval of owner's and underwriters' representatives.

" Payment to be made upon a faithful completion of contract."

We are unable to find anything in the facts pleaded in the counterclaim in question which justifies the position that the underwriters were acting in this matter as trustees of an express trust. On the contrary, no trust whatever is expressed in the contract.

There is nothing to suggest that the underwriters were in any way acting in a representative capacity in making the contract, or otherwise than for their own benefit. The very allegations of the answer preclude the inference of the existence of any trust. It alleges that the transportation company had the right, under the provisions of the insurance policies, to release the steamers and that the defendants were

under obligation under said policies to reimburse the owner for its charges and expenses in so doing. The answer then continues that said "Transportation company agreed with said defendants that it would waive its right under the policies to release said steamers by its own efforts and means and require defendants to reimburse it for its charges and expense therein, and, in lieu thereof, would permit defendants to release said steamers and, for that purpose, to employ said Donnelly Salvage & Wrecking Company, Limited, and contract with said company on the terms of its said proposal for the benefit and use of said United States Transportation Company, and defendants thereupon accepted the said proposal of the Donnelly Salvage & Wrecking Company." Later in the paragraph setting up this counterclaim, the defendants allege that "*The defendants* have been damaged in the sum of $39,258.20 and the further sum of $9,624.50, for all of which the defendants are liable over to the said The United States Transportation Company."

We are unable to spell into the case any trust, either express or implied, from either the contract itself or from the essential and controlling allegations of the answer.

A case somewhat analagous to that under consideration here is that of Newton v. Lee, 139 N. Y. 332. See also Elliott v. Brady, 192 N. Y. 221; Gillespie v. Torrance, 25 id. 306; Lasher v. Williamson, 55 id. 619.

We have reached these conclusions independent of the consideration of the affirmative denial contained in the plaintiff's reply denying that allegation of the answer that the contract with the wrecking company was for the benefit of the transportation company.

Whatever the effect of that denial may be, the same result must be reached, in view of the terms of the contract and the facts pleaded in the answer upon which the counterclaims in question are based.

For these reasons the motion for a reargument is denied, with costs of motion.

Ordered accordingly.